IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SULACO ENTERPRISES LLC, | Case No. 2:25-cv- |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| CHECK POINT SOFTWARE TECHNOLOGIES LTD., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Sulaco Enterprises LLC ("Sulaco" or "Plaintiff") for its Complaint against Check Point Software Technologies Ltd. ("Check Point" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1. Sulaco is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 170, Marshall, TX 75670.

2. On information and belief, Defendant Check Point Software Technologies Ltd. Is a corporation organized under the laws of the Country of Israel, with its principal place of business at 5 Shlomo Kaplan Street, Tel Aviv 6789159, Israel. Upon information and belief, Defendant may be served pursuant to the provisions of the Hague Convention. Upon information and belief, Check Point does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

**JURISDICTION**

3. This is an action for patent infringement arising under the patent laws of the United

States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendant. Defendant regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C.  § 1391 because, among other things, Defendant is not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

6.      Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENT-IN-SUIT

7.      On March 24, 2015, the United State Patent and Trademark Office duly and legally issued U.S. Patent No. 8,990,942 (the "'942 Patent") entitled "Method and Systems for API-Level Intrusion Detection". A true and correct copy of the '942 Patent is available at: https://patentimages.storage.googleapis.com/42/af/9e/b73bd5bf2c7d68/US8990942.pdf.

8.      Sulaco is the sole and exclusive owner of all right, title, and interest in the '942 Patent (the "Patent-in-Suit") and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. Sulaco also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit

and to seek injunctive relief as appropriate under the law.

9. Sulaco has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patent-in-Suit. Upon information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

10. The '942 Patent generally relates to API-level intrusion detection for monitoring and analyzing API calls to detect malicious or unauthorized activity. The technology described in the '942 Patent was developed by inventors Anand Thakadu, Anirban Bhattacharya, Kuldip Shetty, Krishna Prasad Muraleedharan Pillai, Ravi Udaya Kumble, Sourav Bhattacharya, Venu Aluri, and Vitesh Patel. By way of example, this technology is implemented in hardware and software products that provide API-level intrusion detection and sandboxing capabilities.

11. Defendant has infringed and continues to infringe the Patent-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patent-in-Suit.

## COUNT I
### (Infringement of the '942 Patent)

12. Paragraphs 1 through 11 are incorporated by reference as if fully set forth herein.

13. Sulaco has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '942 Patent.

14. Defendant has and continues to directly infringe the '942 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '942 Patent. Such products include but are not limited to CloudGuard Cloud Products including but not limited to the CloudGuard WAF,

CloudGuard CDR, CloudGuard Network Security, CloudGuard CNAPP, CloudGuard Posture Management, CloudGuard Code Security, CloudGuard Workload, CloudGuard Wiz, and Developer Security, Quantum Network Products, including but not limited to Firewalls and Firewall Clusters, Harmony Secure the Workspace Products, including but not limited to Harmony SaaS and Harmony SASE, and Infinity Core Services Collaborative Security Operations & Services products including but not limited to ThreatCloud AI, Check Point Zero Day Protection, and Sandboxing appliances and services, including but not limited to Check Point Sandblast Appliances and the Check Point SandBlast Network.

15. For example, Defendant has and continues to directly infringe at least claim 22 of the '942 Patent by making, using, offering to sell, selling, and/or importing into the United States products that provide API-level intrusion detection and sandboxing capabilities.

16. For example, the Check Point CloudGuard WAF performs an application programming interface (API)-level intrusion detection method. The Check Point CloudGuard WAF performs the step of receiving an API call for a service at an API sandbox module. The Check Point CloudGuard WAF performs the step of parsing the API call to extract at least one of: an API call name; or one or more API call parameters. The Check Point CloudGuard WAF performs the step of generating a copy of the at least one of: the API call name or the one or more API call parameters.

> **Events/Logs Schema**
>
> When events are sent from CloudGuard WAF agents to be viewed in the cloud application and/or to a Syslog/CEF server, they are sent in a specific field structure.
>
> This page will document the fields being sent. This will allow filter queries in the cloud application and log parsing to be done on the Syslog/CEF side (see configuration of Trigger objects for more info).

[1]

17. The Check Point CloudGuard WAF performs the step of providing, to an intrusion detection rules execution engine including one or more hardware processors, the copy of the at least one of: the API call name or the one or more API call parameters. The Check Point CloudGuard WAF performs the step of determining, via the intrusion detection rules execution engine, whether the API call is in violation of one or more security rules obtained from a security rules object. The Check Point CloudGuard WAF performs the step of providing an indication of whether the API call is in violation of the one or more security rules.

---

[1] CloudGuard WAF Documentation: Events/Logs Schema. Available at: https://waf-doc.inext.Check Point.com/references/events-logs-schema. (Last Accessed December 5, 2025).

# Phase 3 – Contextual Evaluation Engine

This contextual engine is using machine learning techniques to make a final determination whether the payload is malicious, in the context of a specific customer/environment, user, URL and field that in a weighted function sums up to a confidence score. If the score is larger than the threshold the request is dropped.

These are the factors that are considered by the engine:

**Reputation factor**

In each request, the request originator is assigned a score. The score represents the originator's reputation based on previous requests. This score is normalized and used to increase or decrease the confidence score.

**Application awareness**

Often modern applications allow users to modify web pages, upload scripts, use elaborate query search syntax, etc. These provide a better user experience but without application awareness, these are detected as malicious attacks. We use ML to analyze and baseline the underlying application's behavior.

**Learn user input format**

The system can identify special user input types that are known to cause false detection and apply ML to modify our detection process and allow legitimate behavior without compromising attack detection.

**False detection factor**

If there is an inconsistency in detection a factor is applied to the confidence score based on the reputation factor per detection location.

**Supervised learning module**

Optional module that shows administrators payload and ask them to classify them thus accelerating the learning process.

---

[2] CloudGuard WAF Documentation: Contextual Machine Learning. Available at: https://waf-doc.inext.Check Point.com/concepts/contextual-machine-learning#phase-3-contextual-evaluation-engine. (Last Accessed December 5, 2025).



---

[3] CloudGuard WAF Documentation: API Security Overview.  Available at: https://waf-doc.inext.CheckPoint.com/additional-security-engines/api-protection.  (Last Accessed December 5, 2025).



18. The Check Point CloudGuard WAF uses an API sandbox module (e.g., ThreatCloud AI, Check Point Zero Day Protection, and Sandboxing appliances and services, including but not limited to Check Point Sandblast Appliances, and the Check Point SandBlast Network.) co-located at an enterprise software gateway and performs the step of receiving API calls for user selected developers and user selected API name references and performs the step of processing the received API calls for application specific intrusion detection.

---

[4] Check Point Webpage: "CloudGuard WAF".  Available at: https://www.CheckPoint.com/cloudguard/waf/#overview.  (Last Accessed December 5, 2025).

8



---

[5] Check Point Webpage: "CloudGuard WAF". Available at: https://www.CheckPoint.com/cloudguard/waf/#overview.  (Last Accessed December 5, 2025).

[6] Check Point Webpage: "What is Sandboxing?" Available at: https://www.CheckPoint.com/cyber-hub/threat-prevention/what-is-sandboxing/. (Last Accessed December 5, 2025).

9



---

[7] Check Point SandBlast Datasheet at 1. Available at: https://www.CheckPoint.com/downloads/products/sandblast-threat-emulation-appliances-datasheet.pdf. (Last Accessed December 5, 2025).

---

[8] Check Point SandBlast Datasheet at 2. Available at: https://www.CheckPoint.com/downloads/products/sandblast-threat-emulation-appliances-datasheet.pdf. (Last Accessed December 5, 2025).

11

For organizations that have moved much, or are in the process of moving their services to Azure-specific instances, Check Point recommends a security architecture approach that leverages multiple layers of protection. This approach incorporates:

- Advanced threat prevention across the environments and between Azure and private data centers
- Macro and micro-segmentation within the Azure IaaS functions
- Access control according to a hub and spoke design
- Centralized security policy management within the cloud or on premise
- Cloud security posture management
- Cloud-delivered threat prevention for user traffic to SaaS applications and general Internet traffic
- API-level inspection for rogue connections and embedded threats
- Automated forensics of host and user events and threats

The below diagram summarizes the above points into a network topology. More information on this design recommendation is available on the Check Point webiste's best practices section, at: https://www.checkpoint.com/architecture/security-best-practices/.

[9]

---

[9] Check Point Blog: "Best Practices Identifying and Mitigation the Impact of Sunburst". Available at: https://blog.CheckPoint.com/security/best-practice-identifying-and-mitigating-the-impact-of-sunburst/.  (Last Accessed December 5, 2025).

> Activating the **Threat Emulation** engine. The Threat Emulation engine uses an emulated run in a sandbox located in the Check Point *ThreatCloud*, to prevent multi-stage attacks at the earliest stage.
> When selected, multiple known file types are scanned by the Threat Emulation engine - Word, Excel, PowerPoint, PDF and executable files.[10]

19. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Check Point has used the Accused Products in a manner that directly infringes at least claim 22 of the '942 Patent.

20. Defendant has and continues to indirectly infringe one or more claims of the '942 Patent by knowingly and intentionally inducing others, including Check Point customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

21. Defendant, with knowledge that these products, or the use thereof, infringe the '942 Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '942 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patent-in-Suit at least as early as the issuance of the Patent-in-Suit.

---

[10] CloudGuard WAF Documentation: File Security. Available at: https://waf-doc.inext.CheckPoint.com/additional-security-engines/file-security#step-3-edit-the-settings-of-the-file-security-sub-practice. (Last Accessed December 5, 2025).

22. Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '942 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.

23. Defendant has indirectly infringed and continue to indirectly infringe one or more claims of the '942 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '942 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '942 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '942 Patent. Defendant performs these affirmative acts with knowledge of the '942 Patent and with intent, or willful blindness, that they cause the direct infringement of the '942 Patent.

24. Sulaco has suffered damages as a result of Defendant's direct and indirect infringement of the '942 Patent in an amount to be proven at trial.

25. Sulaco has suffered, and will continue to suffer, irreparable harm as a result of

Defendant's infringement of the '942 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Sulaco prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patent-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patent-in-Suit;

c. An order awarding damages sufficient to compensate Sulaco for Defendant's infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Sulaco its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: December 5, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　 /s/ Vincent J. Rubino, III
　　　　　　　　　　　　　　　　　　　　　Alfred R. Fabricant
　　　　　　　　　　　　　　　　　　　　　NY Bar No. 2219392
　　　　　　　　　　　　　　　　　　　　　Email: ffabricant@fabricantllp.com
　　　　　　　　　　　　　　　　　　　　　Peter Lambrianakos
　　　　　　　　　　　　　　　　　　　　　NY Bar No. 2894392
　　　　　　　　　　　　　　　　　　　　　Email: plambrianakos@fabricantllp.com
　　　　　　　　　　　　　　　　　　　　　Vincent J. Rubino, III
　　　　　　　　　　　　　　　　　　　　　NY Bar No. 4557435
　　　　　　　　　　　　　　　　　　　　　Email: vrubino@fabricantllp.com

**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF,
SULACO ENTERPRISES LLC***